1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BENJAMIN THOMAS TREMPER,              Case No.  2:21-cv-01456-KJM-JDP (HC)

12            Petitioner,                  FINDINGS AND RECOMMENDATIONS
                                           THAT THE PETITION FOR WRIT OF
13       v.                                HABEAS CORPUS BE DENIED

14   PATRICK COVELLO,                      OBJECTIONS DUE IN FOURTEEN DAYS

15            Respondent.                  ECF No. 1

16

17          Petitioner Benjamin Thomas Tremper, a state prisoner proceeding without counsel, seeks

18   a writ of habeas corpus under 28 U.S.C. § 2254.  ECF No. 1.  Petitioner advances one claim: that

19   the trial court erred when it instructed the jury on adoptive admissions.  *Id.*  For the reasons stated

20   below, I recommend that his claim be denied.

21                                  **Background**

22          In the early hours of November 15, 2016, Charles G., who was 88 years old and living

23   alone in a retirement community, noticed that the blinds to his sliding glass door were askew.

24   ECF No. 11-8 at 62-63, 66, 90.  He went to investigate and found petitioner inside his apartment.

25   *Id.* at 80.  Petitioner jumped on Charles' back, bringing him to the ground.  *Id.*  Once on the

26   ground, Charles didn't fight back—instead, he crawled to his bathroom while petitioner rifled

27   through his apartment.  *Id.* at 81.  Once he was in the bathroom, Charles managed to pull the

28   emergency cord, and minutes later, a nightshift employee knocked on his door, sending petitioner

1    out the sliding glass door. *Id.* at 80-84, 89. The nightshift employee called the police, who

2    responded within five minutes. *Id.* at 89. Charles gave a description of petitioner to the police.

3    *Id.* at 92. One of the responding officers, Officer Stevenson, followed a path of footprints left in

4    the wet morning grass. *Id.* at 219-20. A few hundred feet away from Charles' apartment,

5    Stevenson found petitioner with Charles' stolen belongings, including a jewelry box belonging to

6    Charles' late wife, car keys, and wallet. *Id.* at 162, 173.

7            Charles identified petitioner at a field show-up the same day and a crime scene

8    investigation recovered petitioner's fingerprints from Charles' sliding glass door. *Id.* at 285-87.

9    Shortly after petitioner was arrested and given a *Miranda* warning, he spoke with Stevenson in a

10   recorded interview and wrote Charles an apology letter. *Id.* at 25, 231-32. While most of the

11   interview was transcribed, some of petitioner's statements were deemed "unintelligible" by the

12   transcriber. ECF No. 1 at 22-28. The following colloquy is an example of the transcriber noting

13   petitioner's comments were "unintelligible" during the interview:

14           [Officer Stevenson:] . . . So what happened, you just push him to the
             ground to get out or… [*sic*]
15
             [Petitioner:] (Unintelligible)
16
             [Officer Stevenson:] Huh? Again, dude, why did you pick his [Charles']
17           place?

18           [Petitioner:] (Unintelligible)

19           [Officer Stevenson:] You don't know? You know that its an old folks'
             home, right?
20
             [Petitioner:] No.
21
             [Officer Stevenson:] Huh?
22
             [Petitioner:] (Unintelligible)
23
             [Officer Stevenson:] You didn't know that? So why did you pick that
24           place?

25           [Petitioner:] (Unintelligible). It was open. . . .

26   ECF No. 124-25. The interview and letter were later presented to the jury. *Id.*; ECF No. 11-8 at

27   237.

28

2

1

**Legal Standard**

2      A federal court may grant habeas relief when a petitioner shows that his custody violates

3 federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

4 (2000).  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty

5 Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition.  *See Harrington v. Richter*,

6 562 U.S. 86, 97 (2011).  To decide a § 2254 petition, a federal court examines the decision of the

7 last state court that issued a reasoned opinion on petitioner's habeas claims.  *See Wilson v. Sellers*,

8 138 S. Ct. 1188, 1192 (2018); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003) ("Because,

9 here, neither the court of appeal nor the California Supreme Court issued a reasoned opinion on

10 the merits of this claim, we look to the trial court's decision."); *McCormick v. Adams*, 621 F.3d

11 970, 975-76 (9th Cir. 2010) (reviewing the decision of the court of appeal, which was last

12 reasoned decision of a state court); *Gill v. Ayers,* 342 F.3d 911, 917 n.5 (9th Cir. 2003) ("Because

13 the California Supreme Court denied review of Gill's habeas petition without comment, we look

14 through the unexplained California Supreme Court decision to the last reasoned decision . . . as

15 the basis for the state court's judgment.") (internal quotations omitted).

16      Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been

17 "adjudicated on the merits in state court proceedings" only if the state court's adjudication

18 resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly

19 established Federal law, as determined by the Supreme Court of the United States" or (2) "based

20 on an unreasonable determination of the facts in light of the evidence presented in the State court

21 proceeding."  28 U.S.C. § 2254(d).

22      "A decision is 'contrary to' Supreme Court precedent 'if it applies a rule that contradicts

23 the governing law set forth in [the Supreme Court's] cases or if it confronts a set of facts that are

24 materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

25 result different from [the Supreme Court's] precedent.'"  *Amado v. Gonzalez*, 758 F.3d 1119,

26 1136 (9th Cir. 2014) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002).

27      A decision involves an "unreasonable application" of federal law if it (i) "correctly

28 identifies the governing rule but unreasonably applies it to a new set of facts" or (ii) "fails to

3

1   extend a clearly established legal principle to a new context in a way that is unreasonable."

2   Himes v. Thompson, 336 F.3d 848, 852 (9th Cir. 2003).  The application must be more than

3   incorrect or erroneous; it must be "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63,

4   75 (2003).  "'[I]t is not an unreasonable application of clearly established Federal law for a state

5   court to decline to apply a specific legal rule that has not been squarely established" by the

6   Supreme Court.'"  *Varghese v. Uribe*, 736 F.3d 817, 824 (9th Cir. 2013).

7   **Discussion**

8       Petitioner claims that the trial court erred by instructing the jury on adoptive admissions.[1]

9   ECF No. 1 at 16.  During petitioner's interview with law enforcement, the transcriber inserted

10  "(unintelligible)" for words or phrases that he or she could not understand.  *See*, *e.g.*, ECF No. 1

11  at 22, 24, 25.  Petitioner argues that the jury could have considered his "unintelligible" responses

12  to some of Officer Stevenson's questions as evidence of his guilt.  Instead, he claims that his

13  "unintelligible" responses were actually his "reassert[ion] of his fifth amendment right against

14  self-incrimination."  ECF No. 1 at 17.  Petitioner raised the same argument on direct appeal to the

15

16  _____

    [1] The jury instruction for adoptive admission, which was given by the trial court:

17
18              If you conclude that someone made a statement
        outside of court that (accused the defendant of the crime/ [or]
19      tended to connect the Defendant with the commission of the crime)
        and the Defendant did not deny it, you must decide whether each
        of the following is true:
20              1. The statement was made to the Defendant or
        made in his presence;
21              2. The Defendant heard and understood the
        statement;
22              3. The Defendant would, under all the
        circumstances, naturally have denied the statement if he thought it
23      was not true;
                and
24              4. The Defendant could have denied it but did not.
                If you decide that all of these requirements have
25      been met, you may conclude that the Defendant admitted the
        statement was true.
26              If you decide that any of these requirements has not
        been met, you must not consider either the statement or the
27      Defendant's response for any purpose.

28  ECF No. 11-9 at 8.

4

1    California Court of Appeal, which "easily conclude[d] that any error was harmless" because the

2    evidence against petitioner was overwhelming, the prosecutor never mentioned adoptive

3    admissions during his closing argument, and the trial court instructed the jury to disregard

4    inapplicable jury instructions.  ECF No. 11-1 at 5-9.  I review the Court of Appeal's denial, the

5    last reasoned opinion, under the deferential standard of § 2254.

6         Generally, claims of instructional error raise questions of state law and are not cognizable

7    on federal habeas review.  "[T]he fact that [an] instruction was allegedly incorrect under state law

8    is not a basis for [federal] habeas relief."  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  A

9    federal court's review of a claim of instructional error is highly deferential.  *See Masoner v.*

10   *Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993).  A reviewing court may not judge the instruction

11   in isolation but must consider the context of the entire record and of the instructions as a whole.

12   *See id*.  A state prisoner is not entitled to federal habeas relief unless the instructional error

13   resulted in "actual prejudice."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  If the court is

14   convinced that the error did not influence the jury, or had little effect, the judgment should stand.

15   *See O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

16        Petitioner has failed to show how the Court of Appeal's harmlessness determination meets

17   the requirement of *Richter*, in that it was contrary to, or involved an unreasonable application of,

18   clearly established Federal law.  As pointed out by the Court of Appeal, the evidence of

19   petitioner's guilt was overwhelming: the victim identified petitioner as the man who broke into

20   his home and stole his property, petitioner was located near the scene with the victim's stolen

21   property, petitioner's fingerprints were at the scene of the crime, and petitioner wrote a letter of

22   apology to the victim of the crime.  ECF No. 11-1 at 7-9.  The Court of Appeal also considered

23   the fact that the prosecution never mentioned the jury instruction during its closing argument.  *Id.*

24   at 9.  I conclude that the Court of Appeal's determination was neither contrary to nor based on an

25   unreasonable application of clearly established federal law.

26        Petitioner relies on *Hurd*, but that reliance is misplaced.  *Hurd v. Terhune*, 619 F.3d 1080

27   (9th Cir. 2010).  In *Hurd*, the Ninth Circuit determined that the prosecutor's reliance on the

28   defendant's silence was not harmless because the prosecutor relied heavily on the defendant's

1    refusal to answer, and the evidence of guilt was not overwhelming.  *Id.* at 1090-91.  Here, in

2    contrast, the opposite is true: the prosecutor never relied on the instruction and the evidence of

3    guilt was overwhelming.

4         I cannot find that the Court of Appeal's rejection of petitioner's instructional error claim

5    was "objectively unreasonable."  *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  I

6    recommend that petitioner's claim of instructional error be denied.

7         It is RECOMMENDED that petitioner's petition, ECF No. 1, be denied.

8         I submit these findings and recommendations to the district judge under 28 U.S.C.

9    § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court,

10   Eastern District of California.  The parties may, within 14 days of the service of the findings and

11   recommendations, file written objections to the findings and recommendations with the court.

12   Such objections should be captioned "Objections to Magistrate Judge's Findings and

13   Recommendations."  The district judge will review the findings and recommendations under 28

14   U.S.C. § 636(b)(1)(C).  The parties' failure to file objections within the specified time may result

15   in the waiver of rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

16

17   IT IS SO ORDERED.

18

19   Dated:    May 10, 2022

20                                                    JEREMY D. PETERSON
                                                     UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

27

28